AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br><br>GERALD ESTRADE<br>*Defendant(s)* | ) ) ) Case No.<br>)     13- 01-SCR<br>) )<br>) ) ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    January 7, 2013    in the county of    East Baton Rouge    in the
   Middle    District of    Louisiana   , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 115(a)(1)(B)(2) | Knowingly threatened to murder a former United States official with the intent to retaliate against such official on account of the performance of official duties in violation of Title 18, United States Code, Section 115(a)(1)(B)(2) |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kobey McCall, Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    01/08/2013   

_____
*Judge's signature*

City and state:    Baton Rouge, Louisiana   

Stephen C. Riedlinger, Magistrate Judge
*Printed name and title*

USM

# AFFIDAVIT

Affiant, Kobey McCall, Special Agent, Federal Bureau of Investigation, being duly sworn, deposes and states the following:

1. I am a Special Agent employed by the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been employed by the FBI as a Special Agent since August, 2010. For the past three months I have been assigned to the Federal Bureau of Investigation's (FBI) Capital Area Gang Task Force (CAGTF) located in Baton Rouge, Louisiana. Previously, I was assigned to the FBI Complex Financial Crimes Squad in Baton Rouge, Louisiana.

2. During my employment with the FBI, I have participated in investigations of narcotics trafficking, bank fraud, and public corruption. I am familiar with, and have employed, and/or been exposed to, the investigative techniques used in these types of investigations, such as the use of confidential human sources, physical and electronic surveillance, analysis of documentary and physical evidence, analysis of telephone records, search warrants, consensual recordings, grand jury investigations, the interception of oral, wire, and/or electronic communications, interviews of defendants, witnesses, subjects and informants, as well as other established investigative techniques.

3. Your Affiant is currently engaged in an investigation involving **GERALD ESTRADE** (hereinafter referred to as **ESTRADE**) for violating Title 18, United States Code (U.S.C.), Section 115 (Threatening a former United States Official). The information contained in this affidavit is based on my personal knowledge, as well as information provided by **ESTRADE** and the victim, Former United States Attorney for the Eastern District of Louisiana, Jim Letten. As set forth in detail below, it is alleged that **ESTRADE** knowingly and willfully threatened to kill Letten and his family.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the arrest of **ESTRADE** for the violation listed.

## BACKGROUND

5. **ESTRADE** spent approximately 22 years in Louisiana Department of Corrections (DOC) for killing his juvenile daughter. **ESTRADE** was on parole from around 1999 to around 2001. **ESTRADE** was reincarcerated on a drug charge and was then released from DOC on June 29, 2011. Since that time, **ESTRADE** advised he has been living on the streets in the Baton Rouge area. **ESTRADE** has no known employment and claims to spend his time and money at area casinos. **ESTRADE**

told Agents that he is homeless and does not have vehicle. **ESTRADE** does not have communication with any of his family members.

6. On January 2, 2013, **ESTRADE** walked into the Emergency Room at Baton Rouge General Hospital, Mid City, on Florida Boulevard and advised the medical staff there that he had taken a certain quantity of pills attempting to commit suicide. This was **ESTRADE**'s fourth suicide attempt. The medical staff admitted **ESTRADE** to the psychiatric ward under a Physician's Emergency Commitment (PEC) at that time. On January 4, 2013, **ESTRADE**'s status changed to formal voluntary admission. **ESTRADE** currently remains at the hospital in the psychiatric ward. The hospital staff have no plans to discharge him at this time.

## FACTS ESTABLISHING PROBABLE CAUSE

7. On January 7, 2013, **ESTRADE** told former Baton Rouge Chief of Police and current Head of Security for Baton Rouge General Hospital, Mid City, Jeff LeDuff that he wanted to kill former United States Attorney for the Eastern District of Louisiana Jim Letten and Letten's family. LeDuff then contacted the FBI regarding **ESTRADE**'s threats towards Letten. Affiant and SA Brett D. Skiles proceeded to Baton Rouge General Hostpial, Mid City, to interview **ESTRADE**.

8. During the interview, **ESTRADE** told Agents that he wanted to talk to them and advise them of his intent to kill Letten and Letten's family.

9. **ESTRADE** told Agents that in 1999 or 2001 he was out of prison on parole. During that time, **ESTRADE** claimed to have gone by Letten's house when Letten was outside with a dog. **ESTRADE** told Agents that he talked with Letten for approximately ten minutes and that Letten told **ESTRADE** that the dog's name was Rico. **ESTRADE** stated that Rico was a dark colored Labrador retriever.

10. **ESTRADE** told Agents that in 2005 or 2006, when he was incarcerated, he mailed a letter to the FBI in New Orleans, Louisiana, threatening Letten. **ESTRADE**'s reason for writing the letter was due to his desire to "show off" and to deal with a difficult time he was going through mentally. **ESTRADE** claimed that after he mailed the letter, two FBI Agents came to interview him at the prison facility regarding the threat. **ESTRADE** claimed that Letten caused him "a lot of problems" in response to the threat.

11. **ESTRADE** told Agents if he were discharged from the hospital, he would pay $5 to take a LA SWIFT bus from Baton Rouge to New Orleans and then withdraw the approximately $100 remaining in his bank account at NODA Federal Credit Union. **ESTRADE** stated that he would then use the $100 to purchase a firearm from an individual "off the streets". **ESTRADE** stated that he could get a firearm with ease. Although **ESTRADE** did not know exactly where Letten lived or worked, he stated that he would then be intent on finding Letten, killing Letten and his family, and then killing himself. **ESTRADE** stated that this would be similar to a "bucket list" or a list of things he wanted to accomplish before he died.

12. **ESTRADE** stated that he has heard voices in his head repeatedly telling him to kill Letten since October, 2012. **ESTRADE** reiterated to Agents that his intent was to kill Letten and Letten's family and then kill himself.

13. Based on the interview with **ESTRADE**, Affiant and SA Skiles believe that **ESTRADE's** threat against Letten is credible and in retaliation for the perceived "problems" that resulted from the letter **ESTRADE** sent threatening Letten during Letten's term of service as a United States Attorney.

14. On January 8, 2013, Affiant and SA Skiles telephonically contacted Letten. Letten stated that although he could not recall the specific date, he did remember talking with **ESTRADE**. Letten stated that he was walking his dog on his way back to his residence when an individual drove up in a vehicle and introduced himself as Jerry Estrade. Letten recalled **ESTRADE** purposefully pronounced his name differently in a possible attempt to disguise his identity. **ESTRADE** knew who Letten was and they spoke for a few minutes. Letten had no recollection of the specifics of the conversation with **ESTRADE**. Letten stated that **ESTRADE** drove away and he has not seen or heard from him since. Letten later realized **ESTRADE** was the postal worker who was previously convicted of killing his own daughter. Letten told Affiant that that he takes this specific threat very seriously and believes it to be credible.

## CONCLUSION

15. Based on the foregoing facts, your Affiant respectfully submits that there is probable cause to believe that **ESTRADE** knowingly and willfully threatened to murder the former United States Attorney for the Eastern District of Louisiana, Jim Letten, with intent to retaliate against Letten for actions taken during Letten's term of service, in violation of Title 18, United States Code, Section 115(a)(1)(B)(2).

Accordingly, your Affiant respectfully requests that an arrest warrant be issued for

**GERALD ESTRADE**.

_____
KOBEY MCCALL, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me on this 8th day of January, 2013.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE